IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

| | |
|---|---|
| CHRISTINA MARIE CARTER, | |
| Plaintiff, | CIVIL ACTION NO.: 5:20-cv-100 |
| v. | |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | |
| Defendant. | |

### REPORT AND RECOMMENDATION

Plaintiff contests the decision of Administrative Law Judge David Peeples ("the ALJ" or "ALJ Peeples") denying her claim for Disability Insurance Benefits. Plaintiff urges the Court to reverse the ALJ's decision. Doc. 18 at 25. Defendant asserts the Commissioner's decision should be affirmed. Doc. 19 at 17. I **RECOMMEND** the Court **REMAND** this case to the Commissioner under sentence four of 42 U.S.C. § 405(g) and **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal.

### BACKGROUND

Plaintiff filed an application for Period of Disability and Disability Insurance Benefits on May 15, 2017. R. 139.[1] On June 4, 2019, ALJ Peeples held a hearing, at which Plaintiff, who was represented by counsel, appeared and testified via video teleconference. Id. Tina

---

[1] A transcript of the entire proceedings before the Social Security Administration appears at Document Numbers 14-1 through 14-12. Although the transcript is broken into multiple PDF documents, each with its own CM/ECF docketing number, the transcript bears individual page numbers that run sequentially through the entire transcript. Record citations in this Report (identified with "R.") are to the individual transcript page numbers. For efficiency, no reference to the CM/ECF docketing number or the respective PDF page numbers is provided here.

Stambaugh, a vocational expert, also appeared at the hearing.  Id.  ALJ Peeples denied Plaintiff's claims after the hearing in a decision issued on July 30, 2019.  R. 139–52.  The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  R. 1.

Plaintiff, born on December 5, 1968, was 48 years old at the time of the alleged onset date and 50 years old at the time of the ALJ's decision in 2019.  R. 172; Doc.18 at 6.  She has a high school education, a secretarial certificate, and previously held a nurse's aide certificate.  R. 171.  Plaintiff's past relevant experience was her work as a general office clerk.  R. 151.

## DISCUSSION

### I. The ALJ's Findings

Title II of the Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Act qualifies the definition of disability as follows:

> An individual shall be determined to be under a disability only if [her] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]

42 U.S.C. § 423(d)(2)(A).  Pursuant to the Act, the Commissioner has established a five-step process to determine whether a person meets the definition of disability.  20 C.F.R. §§ 404.1520, 416.920; Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

The first step determines if the claimant is engaged in "substantial gainful activity."  Id.  If the claimant is engaged in substantial gainful activity, then benefits are immediately denied.

Id. If the claimant is not engaged in such activity, then the second inquiry is whether the claimant has a medically severe impairment or combination of impairments. Id. at 140–41. If the claimant's impairment or combination of impairments is severe, then the evaluation proceeds to step three. The third step requires a determination of whether the claimant's impairment meets or equals one of the impairments listed in the Code of Federal Regulations and acknowledged by the Commissioner as sufficiently severe to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. Pt. 404, Subpt. P. App. 1; Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004). If the impairment meets or equals one of the listed impairments, the plaintiff is presumed disabled. Yuckert, 482 U.S. at 141.

If the impairment does not meet or equal one of the listed impairments, the sequential evaluation proceeds to the fourth step to determine if the impairment precludes the claimant from performing past relevant work, i.e., whether the claimant has the residual functional capacity to perform her past relevant work. Id.; Stone v. Comm'r of Soc. Sec., 503 F. App'x 692, 693 (11th Cir. 2013). A claimant's residual functional capacity "is an assessment . . . of the claimant's remaining ability to do work despite his impairments." Id. at 693–94 (ellipsis in original) (quoting Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)). If the claimant is unable to perform her past relevant work, the final step of the evaluation process determines whether she can adjust other work in the national economy, considering her age, education, and work experience. Phillips, 357 F.3d at 1239. Disability benefits will be awarded only if the claimant is unable to perform other work. Yuckert, 482 U.S. at 142.

Here, the ALJ followed this sequential process to determine Plaintiff did not engage in substantial gainful activity since her alleged onset date, September 12, 2016. R. 141. At step two, ALJ Peeples determined Plaintiff had the following severe impairments: degeneration of

3

cervical intervertebral disc and lumbar disc degeneration with radiculopathy, rheumatoid arthritis, polycystic kidney disease, and obesity. R. 142. The ALJ also determined Plaintiff had non-severe medical impairments, including diabetes, hypertension, carpal tunnel syndrome, and depression. R. 142. Notably, the ALJ considered Plaintiff's allegations concerning fibromyalgia and discussed the criteria for assessing claims of fibromyalgia in Social Security Ruling 12-2p. Id. Ultimately, the ALJ concluded Plaintiff did not have a medically determinable impairment of fibromyalgia. Id.

At the third step, the ALJ determined Plaintiff's impairment or combination of impairments did not meet the severity of a listed impairment. R. 143. The ALJ found Plaintiff has the residual function capacity ("RFC") to perform light work with the following exceptions: she is able to sit for six hours and stand or walk for four hours during an eight-hour day; she is able to frequently balance and push or pull with her bilateral lower extremities; she is able to occasionally climb raps or stairs, stoop, kneel, crouch, and crawl but never climb ladders, ropes, or scaffolds; and she must avoid concentrated exposure to heat, vibration, and workplace hazards, such as unprotected heights and moving mechanical parts. R. 144. At the next step, the ALJ determined Plaintiff could perform past relevant work as a general office clerk, since this work does not require performance of work-related activities precluded by Plaintiff's RFC. R. 151.

**II.     Issues Presented**

Plaintiff asserts the ALJ erred because his RFC determination is unsupported by substantial evidence, as the ALJ: (1) failed to comply with Social Security Ruling 12-2p in assessing Plaintiff's claims of fibromyalgia; (2) accepted testimony that Plaintiff could do work the Dictionary of Occupational Titles ("DOT") says requires abilities the ALJ found Plaintiff

does not have; and (3) did not properly evaluate whether Plaintiff could do her past work as actually performed.[2]

## III.     Standard of Review

It is well-established judicial review of social security cases is limited to questions of whether the Commissioner's factual findings are supported by "substantial evidence" and whether the Commissioner has applied appropriate legal standards. Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). A reviewing court does not "decide facts anew, reweigh the evidence or substitute" its judgment for the Commissioner. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). Even if the evidence preponderates against the Commissioner's factual findings, the court must affirm a decision supported by substantial evidence. Id.

However, substantial evidence must do more than create a suspicion of the existence of the fact to be proved. The evidence relied upon must be relevant evidence which a reasonable mind would find adequate to support a conclusion. Ingram v. Comm'r of Soc. Sec. Admin., 496 F. 3d 1253, 1260 (11th Cir. 2007). The substantial evidence standard requires more than a scintilla but less than a preponderance of evidence. Dyer, 395 F.3d at 1210. In its review, the court must also determine whether the ALJ or Commissioner applied appropriate legal standards.

---

[2]     Plaintiff filed a Notice of Supplemental Authority, which points to Collins v. Yellen, 141 S. Ct. 1761 (2021), and includes an Office of Legal Counsel Memorandum concerning the constitutionality of statutory restrictions on the President's ability to remove the Social Security Administration Commissioner from that position. Doc. 21; Constitutionality of the Commissioner of Social Security's Tenure Protection, 45 Op. O.L.C. __ (July 8, 2021). Plaintiff states this authority bears on "the constitutionality of the Commissioner's decision" in this case. Doc. 21. It is unclear why Plaintiff filed this Notice of Supplemental Authority. Neither party raised any issue concerning the constitutionality the Commissioner's appointment or decision in the briefing. Plaintiff's Notice fails to take any position or advance any argument, simply observing the authority is related to the constitutionality of the Commissioner's decision. Having reviewed the provided authority, I cannot discern how the authority is germane to any of the issues presented in this case. Accordingly, I do not address Plaintiff's Notice of Supplemental Authority any further.

Failure to delineate and apply the appropriate standards mandates the findings be vacated and remanded for clarification. Cornelius, 936 F.2d at 1146.

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982), *overruling by statute on other grounds recognized by* Lane v. Astrue, No. 8:11-CV-345-T-27, 2012 WL 292637, at *4 (M.D. Fla. Jan. 12, 2012).

### IV. Whether the ALJ Failed to Comply With SSR 12-2p in Assessing Plaintiff's Claims of Fibromyalgia

Plaintiff argues ALJ Peeples failed to comply with SSR 12-2p when he assessed Plaintiff's diagnosis of and treatment for fibromyalgia. Doc. 18 at 13–14. Plaintiff further argues this error negatively impacted the ALJ's determination of Plaintiff's RFC. Id. at 16.

The Commissioner responds the ALJ did not err because Plaintiff failed to meet all the criteria to establish a medically determinable impairment of fibromyalgia, including the requirement other disorders were excluded as a cause of the symptoms. Doc. 19 at 7. Furthermore, the Commissioner argues if there were error it was harmless because Plaintiff fails to show how a finding of medically determinably impairment of fibromyalgia would have made any difference in the RFC, particularly in light of the fact the ALJ concluded Plaintiff did have a severe impairment of rheumatoid arthritis and the symptoms for the two impairments are generally the same. Id. at 10.

Social Security Ruling 12-2p "provides guidance on how the SSA develops evidence that a person has a medically determinable impairment of fibromyalgia and how it evaluates fibromyalgia in disability claims."[3]  <u>Sorter v. Soc. Sec. Admin., Comm'r</u>, 773 F. App'x 1070, 1073 (11th Cir. 2019); SSR 12-2p, 2012 WL 3104869 (July 25, 2012).  The ruling provides two different sets of criteria for assessing whether a person has a medically determinable impairment of fibromyalgia: the 1990 ACR Criteria and the 2010 ACR Criteria.  SSR 12-2p.  The ruling explains the SSA will find a claimant has a medically determinable impairment of fibromyalgia if "the physician diagnosed [fibromyalgia] and provides the evidence we describe in section [the 1990 ACR Criteria] or [the 2010 ACR Criteria], and the physician's diagnosis is not inconsistent with the other evidence in the person's case record."

The 1990 ACR Criteria require a person have all three of the following:

1. A history of widespread pain—that is, pain in all quadrants of the body . . . and axial skeletal pain—that has persisted (or that persisted) for at least 3 months.  The pain may fluctuate in intensity and may not always be present.

2. At least 11 positive tender points on physical examination . . . .  The positive tender points must be found bilaterally . . . and both above and below the waist.
. . . .

3. Evidence that other disorders that could cause the symptoms or signs were excluded.

The 2010 ACR Criteria require a person have all three of the following:

1. A history of widespread pain . . . .

2. Repeated manifestations of six or more [fibromyalgia] symptoms, signs, or co-occurring conditions . . .; and

---

[3]  Social Security Rulings "are binding on all components of the Social Security Administration. 20 C.F.R. § 402.35(b)(1).

7

>   3.  Evidence that other disorders that could cause these repeated manifestations of symptoms, signs, or co-occurring conditions were excluded.

After concluding a person has a medically determinable impairment of fibromyalgia, the SSA considers the impairment in the normal five-step sequential process used in any adult claim for disability benefits. Id.

Here, the ALJ considered Plaintiff's allegations related to fibromyalgia but concluded Plaintiff did not have a medically determinable impairment of fibromyalgia. In his opinion, the ALJ stated Plaintiff had a "possible fibromyalgia diagnosis." The Court notes Plaintiff was, in fact, diagnosed with fibromyalgia over the course of several years and received treatment for the diagnosis. R. 824–26, 930–32, 937–38, 1076–77, 1096–97. Dr. Charles Galea, MD, Plaintiff's rheumatologist, recorded consistent fibromyalgia indicators from follow-up appointments between July 2018 until June 2019. R. 822–27, 927–39, 1074–78, 1093–99. Despite the ALJ's equivocal language, Plaintiff's fibromyalgia diagnosis is not in dispute—the ALJ spoke with the Plaintiff and her counsel during the hearing about that diagnosis. See R. 185, 186–88.

When considering the fibromyalgia diagnosis in his opinion, the ALJ recited the various requirements for both the 1990 Criteria and the 2010 Criteria and then concluded without any elaboration the evidence failed to show any of the requirements had been met. R. 142. In doing so, the ALJ made a fundamental error about the evidence. The ALJ states the record failed "to show at least 11 positive tender points," but, in fact, the evidence shows, over the course of eight months, three visits confirming 18 out of 18 positive tender points. R. 142, 824–25, 930, 1076–77. Additionally, the record identifies the location of all the tender points which exist in all quadrants of the body, contrary to the ALJ's findings. R. 142, 824–25, 930, 1076–77. The ALJ even cites to the precise records which shows the existence of those tender points. R. 142. The ALJ's errors in describing the record indicates the ALJ did not adequately consider the record or

made fundamental mistakes about the record when it came to Plaintiff's fibromyalgia diagnosis and treatment. Because the ALJ made a foundational error about the fibromyalgia evidence, the Court cannot be confident the ALJ reliably considered the record when making his determination.

The errors described are immaterial if the ALJ were correct the record does not show exclusion of other disorders that could cause Plaintiff's symptoms or signs. Under both the 1990 and 2010 Criteria, there must be evidence showing other disorders that could cause the claimant's symptoms were excluded. SSR 12-2p. The Regulation provides a list of tests doctors can utilize to determine if other disorders are causing the claimant's symptoms, including "complete blood counts, erythrocyte sedimentation rate, anti-nuclear antibody, thyroid function, and rheumatoid factor." Id. In his opinion, the ALJ states the evidence does not show other disorders were excluded. R. 142. However, there is evidence showing some of the suggested tests from SSR 12-2p were performed. Indeed, both Plaintiff and Commissioner have highlighted the evidence of these tests and argue the test results support their opposing positions. Doc. 18 at 11–12, 13 ("Her bloodwork showed positive ANA suggesting an autoimmune disease. Her bloodwork also showed a high sedimentation rate evidencing inflammation."); Doc. 19 at 7 ("[T]hese tests were performed and they came back positive. This supports the conclusion that Plaintiff's symptoms were caused by other conditions such as her rheumatoid arthritis."). However, neither party clearly articulates why the tests results cut in their favor.[4] Ultimately, it is undisputed that some of the SSR 12-2p tests were conducted, but the record appears to lack any explanation of those results by Plaintiff's treating or examining physicians. R. 942–59.

---

[4] The parties appear to both rely on certain "positive" test results as evidence other disorders either were or were not excluded as the cause of Plaintiff's symptoms. The parties' briefing fails to explain which specific results are relied on or how those results cut in either party's favor.

More importantly, the ALJ's opinion fails to acknowledge the tests or explain how the tests failed to exclude other disorders as a cause of Plaintiff's symptoms. Since some of the exclusion tests were performed and both sides argue the presence of the tests support their side, the Court cannot determine if the ALJ's statements on exclusion of other disorders is, in fact, supported by substantial evidence.

To be clear, the Court takes no stance on whether Plaintiff has a medically determinable impairment of fibromyalgia, and the Court is not suggesting the ALJ must, or should, make a determination one way or another. Dyer, 395 F.3d at 1210 ("[The court] may not decide facts anew, reweigh the evidence, or substitute [the court's] judgment for that of the Commissioner."). Rather, if the ALJ makes a finding Plaintiff does not have a medically determinable impairment of fibromyalgia, he must provide an adequate explanation of his reasons for doing so. Without such guidance from the ALJ, the Court is unable to exercise meaningful judicial review.

## V.     Whether the ALJ'S Errors Were Harmless

Though the ALJ plainly erred in his consideration of Plaintiff's fibromyalgia evidence, this Court will not overturn a decision for an error which "do[es] not affect the parties' substantial rights." Zoslow v. Comm'r of Soc. Sec., 778 F. App'x 762, 764 (11th Cir. 2019) (citing Shinseki v. Sanders, 556 U.S. 396, 407 (2009)); see also Griffin v. Astrue, No. CV411-320, 2013 WL 633049, at *3 (S.D. Ga. Feb. 20, 2013) ("Harmless error analysis applies where substantial evidence supports the ALJ's conclusions and some legal error occurred that was not case dispositive."). An error is harmless if the error does not "effect the judge's ultimate determination." Hunter v. Comm'r of Soc. Sec., 609 F. App'x 555, 558 (11th Cir. 2015) (citing Diorio v Heckler, 721 F.2d 726, 728 (11th Cir. 1983)); see also Sarli v. Berryhill, 817 F. App'x 916, 919 (11th Cir. 2020) (holding ALJ committed harmless error in failing to state the weight it

gave to certain medical opinions because the failure would not have affected the ultimate outcome of the ALJ's decision).

The Commissioner asserts any failure to consider fibromyalgia is harmless error because the ALJ did consider Plaintiff's rheumatoid arthritis in his RFC determination. Doc. 19 at 10. The Commissioner argues Plaintiff testified the symptoms caused by rheumatoid arthritis and fibromyalgia are similar, and, therefore, the ALJ would have come to the same conclusion even if he had concluded Plaintiff had a medically determinable impairment of fibromyalgia. Id. at 8. Plaintiff disagrees, arguing that by disregarding her fibromyalgia diagnosis, the ALJ did not account for her symptoms or pain in the RFC. Doc. 20 at 4. For this reason, Plaintiff argues substantial evidence does not support the ALJ's RFC determination or the conclusion Plaintiff is not disabled. Id.

The Commissioner's argument the ALJ already considered the effects of Plaintiff's fibromyalgia symptoms by considering the effects of her rheumatoid arthritis is unconvincing. Though the Commissioner states Plaintiff testified her pain from her rheumatoid arthritis was essentially the same as the pain from her fibromyalgia, a review of the transcript shows Plaintiff equivocated on this matter after her initial answer. See R. 186–87 ("Q: [W]ith the rheumatoid arthritis and the fibromyalgia, can you tell the difference between the pain associated with each one of those? A: No, sir . . . . But the fibromyalgia, it hurts me more in my shoulders, it makes me, you know, more stiff, it makes you ache all over."). Additionally, evidence in the record suggests the treatments for the fibromyalgia and the rheumatoid arthritis were different— Plaintiff's medical history indicates two different medications prescribed to treat the fibromyalgia pain and the rheumatoid arthritis pain separately. R. 90–91, 815. This evidence indicates there is at least some likelihood that if the ALJ had concluded Plaintiff had a medically

11

determinable impairment of fibromyalgia in addition to rheumatoid arthritis, his RFC determination may have been different.  Thus, determining Plaintiff's fibromyalgia was not a medically determinable impairment affected Plaintiff's substantial rights.

Accordingly, I **RECOMMEND** the Court **REMAND** the case to the Commissioner for further consideration.  Given my recommendation, the Court declines to address Plaintiff's remaining enumeration of error.  Doc. 18 at 19–25.

## CONCLUSION

Based on the foregoing, I **RECOMMEND** the Court **REMAND** this case to the Commissioner under sentence four of 42 U.S.C. § 405(g) and **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date.  Objections shall be specific and in writing.  Any objection the Magistrate Judge failed to address a contention raised in the Complaint must be included.  Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions.  28 U.S.C. § 636(b)(1)(C); Harrigan v. Metro Dade Police Dep't Station #4, 977 F.3d 1185, 1192–93 (11th Cir. 2020).  To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections.  Harrigan, 977 F.3d at 1192–93; 11th Cir. R. 3-1.  A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge.  Objections not

meeting the specificity requirement set out above will not be considered by a District Judge.  A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO REPORTED and RECOMMENDED**, this 1st day of February, 2022.

BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA